# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MONICA WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:19-cv-00953 |
| | ) |
| MNPS and DR. CORKE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Monica Wright, a Tennessee resident, filed this *pro se* employment discrimination Complaint under the Americans with Disabilities Act ("ADA") against MNPS (i.e., the Metropolitan Nashville Public School) and its Director of Nutrition, Dr. Briana Corke. (Doc. No. 1.) She also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 2.)

The Court granted the application to proceed *in forma pauperis*. (Doc. No. 4). Based on an initial review of the complaint, the Court ordered Wright to demonstrate that she exhausted administrative remedies for her ADA claim by either submitting a copy of the right-to-sue notice she received from the Equal Employment Opportunity Commission ("EEOC") or explaining why she is unable to do so. (Id.) Wright timely filed a right-to-sue notice. (Doc. No. 6.) Thus, the Complaint is again before the Court for initial review.

I.  Initial Review of the Complaint

The Court must conduct an initial review of the Complaint and dismiss any action filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §

1915(e)(2)(B); see also McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997) (holding the screening procedure established by § 1915(e) also applies to *in forma pauperis* complaints filed by non-prisoners), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007).

    A.    Standard of Review

In reviewing the Complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)), that rises "above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court does not accept "legal conclusions masquerading as factual allegations," Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007), or make "unwarranted factual inferences." DirectTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383; Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004); Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is neither

"to ferret out the strongest cause of action on behalf of *pro se* litigants," nor to "advis[e] litigants as to what legal theories they should pursue").

B.      Factual Allegations

Liberally construing the Complaint and drawing the necessary reasonable inferences, it appears that Wright began working in the MNPS Nutrition Department in August of 2018. She prepared food for pre-kindergarten students and delivered it on heavy carts. Wright originally worked as part of a group of four women, and was partnered with the group lead, who passed along directions from the manager. Wright was hired as a part-time employee, but the lead gave her the same tasks as a full-time employee, including cutting food, putting food away in the closet and freezer, picking up boxes containing wholesale-size cans of food, and working the cash register. Wright also had to manually wash dishes because the dishwasher was broken. In March 2019, the group was reduced to three workers. In April 2019, it was reduced again to two workers. At that time, the only other employee became the new lead and had to work the cash register. This left Wright to prepare and deliver nine carts of food with little help, wash dishes, scrub pans, and sweep the kitchen. It was "too much" for Wright. (Doc. No. 1.)

Wright began to notice that her hands would tingle, go numb, and hurt. She would awaken in the middle of the night from the pain. When Wright mentioned this to her manager, the manager responded that "mine do that too," and said she was going to the doctor in the summer. Wright's pain, however, got worse. She decided not to wait, and went to her doctor. The doctor referred Wright to an orthopedic specialist, who performed tests and diagnosed Wright with severe carpal tunnel syndrome in both hands.

On May 10, 1019, the orthopedist gave Wright work restrictions for light duty with no dish washing. On July 19, 2019, her doctor limited her work to four weeks of no repetitive gripping,

3

pushing, or pulling; no lifting over 10 pounds; and no washing dishes. On August 13, 2019, Wright obtained a third doctor's note for no lifting over five pounds and no washing dishes. Wright presented each of these notes to MNPS Director of Nutrition Dr. Briana Corke., who stated that "this is not job-related," did not seem concerned, and did not help Wright in any way. After receiving the final note, Dr. Corke told Wright that she did not need to go back to work.

Wright has applied for other light duty positions with MNPS (for example, general worker), which require only a general equivalency diploma. Some of these had been posted as open for months. However, Wright was not interviewed for any position. (Id.)Wright alleges that Dr. Corke has "basically tried to fire her" by only giving her the option of not coming to work and not allowing her to interview for other, lighter-duty positions. (Id. at 7.)

Wright still works in the MNPS kitchen, and every day "it gets harder." (Id.) She found out in August-September 2019 that she also has degenerative disc disease in her upper back. Wright believes this may have come from her job because she has to be "humped over" the sinks when washing dishes, as well as to bend to pick up boxes of food and pans of prepared food, sweep and take out trash, and push or pull iron carts.

C.     Discussion

Wright alleges employment discrimination. On her charge of discrimination filed with the EEOC she checked the box that she intends to bring this action under the ADA, (Doc. No. 1 at 3) that the "discriminatory conduct of which [he] complain[s]" is a failure to accommodate, (Id. at 4) and that Defendants discriminated against her based on disability – specifically, her "severe carpal tunnel in both hands" and "disc degenerat[ive] disease." (Id.) Before reviewing the merits of Wright's claims, the Court first addresses the timeliness of the complaint.

A plaintiff must file a civil lawsuit within 90 days of receiving the right-to-sue notice from the EEOC demonstrating the exhaustion of administrative remedies. See McGhee v. Disney Store, 53 F. App'x 751, 752 (6th Cir. 2014) (citing 42 U.S.C. § 12117(a)) (discussing the 90-day requirement in the context of the ADA). There is a presumption that a plaintiff "receives the EEOC's [right-to-sue] letter by the fifth day after the indicated mailing date." Id. (citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 557 (6th Cir. 2000)). Wright has satisfied the administrative exhaustion requirement by submitting the right-to-sue notice that she received from the EEOC. (See Doc. No. 6 at 2.) The right-to-sue notice is dated January 6, 2019. (Id.) However, based on Wright's filings, the Court presumes that the EEOC intended to date the right-to-sue notice January 6, 2020, but made a typographical error.[1]

The Court received the Complaint on October 25, 2019, before the right-to-sue notice was issued. (Doc. No. 1 at 1.) The Sixth Circuit has instructed that when a plaintiff brings an employment discrimination claim before receiving a right-to-sue notice, she should not be penalized if the problem is timely cured and there is no jurisdictional defect or prejudice to the defendant. See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299 (6th Cir. 2001) (ADA claim); Portis v. State of Ohio, 141 F.3d 632 (6th Cir. 1998). If those conditions are met, "it would be unduly harsh . . . to deny [Wright] h[er] day in court as to h[er] ADA claim." Parry, 236 F.3d at 310; see also Johnson v. Riviana Foods, Inc., No. 2-14-cv-02911-SHL-cgc, 2015 WL 4759002, at *3-4 (W.D. Tenn. May 12, 2015) (declining to dismiss *pro se* employment discrimination claims filed before issuance of right-to-sue letter where defect was cured and there was no prejudice). Here, Wright did not initially satisfy the condition precedent of being issued an EEOC right-to-

---

[1] The Complaint concerns events that occurred in mid-2019, Wright did not file the EEOC charge until August 2019, and she represents that she did not receive the right-to-sue notice until January of 2020. (See Doc. Nos. 1, 6.)

5

sue notice. However, she has now received and submitted the notice, and there is no evidence that Defendants – who have not yet been served – have suffered any prejudice. Accordingly, the Court considers Wright's ADA claims to be timely for the purpose of initial review.

The Court first addresses the proper Defendants to Wright's claims. As an initial matter, Wright's ADA claim against Dr. Briana Corke must be dismissed because individual employees and supervisors cannot be held personally liable under the ADA. Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999); Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004). Instead, the proper Defendant for Wright's ADA claim is her employer. Wright has identified her employer as Defendant MNPS, but MNPS is not an entity capable of being sued separately and distinctly from the Metropolitan Government of Nashville and Davidson County ("Metro"). Bilyeu v. Metro. Gov't of Nashville, No. 3:09-0909, 2010 WL 1408614, at *3 (M.D. Tenn. Mar. 10, 2010) (citing Haines v. Metro. Gov't of Davidson Cty., 32 F. Supp. 2d 991, 994 (M.D. Tenn. 1998)). Claims such as Wright's are therefore necessarily "subsumed within [a] claim against Metro." Id. Accordingly, for purposes of this initial review, the Court liberally construes Wright's ADA claim to be against Metro.

The ADA makes it unlawful for an employer "discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." Brumley v. United Parcel Serv., Inc., 900 F.3d 834, 839 (6th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). To state an ADA failure-to-accommodate claim, Wright must allege plausible facts that: (1) she was disabled within the

meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) MNPS knew or had reason to know about her disability; (4) she requested an accommodation; and (5) MNPS failed to provide the necessary accommodation. Id. (citing Deister v. Auto Club Ins. Ass'n, 647 F. App'x 652, 657 (6th Cir. 2016); Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982-83 (6th Cir. 2011)).

Liberally construing the factual allegations set forth above and taking them as true, as required at this stage of the proceedings, the Court concludes that Wright has stated an ADA failure-to-accommodate claim against her employer sufficient to survive initial review. Wright alleges that she suffers from severe carpal tunnel syndrome, and that the condition limits her ability to perform certain manual tasks. She further alleges that she submitted to MNPS supervisor Dr. Corke three different orthopedic requesting limitations or adjustments to her work duties to lighten the impact on her hands. According to Wright Dr. Corke ignored these requests for accommodation, downplayed Wright's condition, and blocked Wright's attempts to apply for lighter-duty positions. As a result, her job continues to get more difficult. (Doc. No. 1 at 5-7.) At this early stage of the case, this is sufficient for Wright to state a colorable ADA failure-to-accommodate claim.

II.     Conclusion

For the reasons explained above, the Court concludes that Wright has stated a non-frivolous ADA failure-to-accommodate claim, and this claim shall proceed. Consistent with how the Court has construed this claim, it will provide for service of process on Metro. The claim against Dr. Corke will be dismissed.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE